[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 3, 2006
THOMAS K. KAHN
CLERK

No. 05-16370
Non-Argument Calendar
_____

D. C. Docket No. 03-00060-CV-WLS-1

BARRY RICHARDSON,

Plaintiff-Appellant,

versus

DOUGHERTY COUNTY, GA,
OFFICE OF SHERIFF, DOUGHERTY COUNTY, GEORGIA,
JAMIL SABA, individually and in his official
capacity as Sheriff of Dougherty County, Georgia,
DOUGLAS MCGINLEY, individually and is his
official capacity as Colonel for Office of Sheriff
of Dougherty County, Georgia,
MARK SHIRLEY, individually and in his official
capacity as Major for the Office of Sheriff of
Dougherty County, Georgia,
JOHN FIELDS, individually and in his official
capacity as Captain for the Office of Sheriff
of Dougherty County, Georgia,

Defendants-Appellees.

————————————————————————

Appeal from the United States District Court
for the Middle District of Georgia
————————————————————————

**(May 3, 2006)**

Before MARCUS, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Barry Richardson appeals the summary judgment in favor of the Office of the Sheriff for Dougherty County, Georgia, and several individual defendants in their official and individual capacities and against Richardson's complaint for religious discrimination and retaliation under federal law and Georgia law, and claims of libel, tortious interference with an employment relationship, negligent retention, intentional infliction of emotional distress, breach of contract, and violations of due process under Georgia law. We affirm in part and reverse and remand in part.

## I. BACKGROUND

Richardson, a Seventh Day Adventist, was employed from 1995 to 2002 as a deputy with the Sheriff's Office of Dougherty County. In June 2001, Richardson advised his employer that he was a member of the Seventh Day Adventist Church and, according to his religious beliefs, he could not work on the Sabbath, from

2

sundown on Friday until sundown on Saturday. Richardson requested an accommodation to permit him not to work on the Sabbath. Richardson submitted a written request on July 30, 2001. On August 10, 2001, the Sheriff's Office provided Richardson with two alternative accommodations: Richardson could swap shifts with other deputies or take annual leave.

In October 2001, Richardson applied for and received a position as a deputy in Central Control. After his transfer, Richardson notified his new supervisors of his request for religious accommodation. Richardson was again informed that he could take annual leave or swap shifts when he was assigned to work on the Sabbath. Richardson was also advised that other departments might be able to offer greater flexibility to accommodate him. From June 2001 until his termination in June 2002, Richardson did not work on the Sabbath.

In May 2002, the Sheriff's Office became aware of allegations that several jailors had been involved in sexual misconduct while on duty. Lillie Green, a deputy, alleged that she had sex with Richardson and had engaged in sexual activity with five other deputies while at work and on duty. Richardson denied the allegations. Three of the deputies admitted the allegations.

After an investigation, during which polygraph tests were taken, the Sheriff's Office determined that the allegations of sexual misconduct were truthful.

The deputies, including Richardson, were given the opportunity to resign or face disciplinary action. All of the deputies, except Richardson, resigned.

Richardson's supervisor then recommended that Richardson be terminated and a personnel review hearing was held. The review board unanimously supported the recommendation to terminate Richardson, and the Sheriff concurred. Richardson was terminated in June 2002. Following his termination, Richardson filed a charge of discrimination with the EEOC and received a right to sue letter. Richardson filed suit against the Sheriff's Office and several officials and alleged multiple claims. The district court entered summary judgment against Richardson's complaint.

## II. STANDARD OF REVIEW

We review the grant of summary judgment de novo. Lubetsky v. Applied Card Systems, Inc., 296 F.3d 1301, 1304 (11th Cir. 2002). "Under this standard, we view all facts and inferences reasonably drawn from the facts in the light most favorable to the nonmoving party." Id. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

### III. DISCUSSION

On appeal, Richardson makes five arguments: (1) the district court erred when it denied his motion to strike the affidavits of three witnesses because the affidavits relied in part on polygraph test results; (2) the district court erred when it granted summary judgment against his complaint of religious discrimination because there was no admissible evidence to support the legitimate non-discriminatory reason proffered by the Sheriff's Office; (3) the district court erred when it ignored direct evidence of discrimination; (4) the district court erred when it granted summary judgment against his complaint of retaliation; and (5) the district court erred when it granted summary judgment against his claims under state law on the ground of sovereign immunity when the defendants had liability insurance. Because Richardson does not make any argument regarding other aspects of the summary judgment, those arguments are abandoned or waived. Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1308 n.43 (11th Cir. 1998).

### A. *The Motion to Strike was Properly Denied.*

Richardson argues that the district court erred when it denied his motion to strike three affidavits filed by the Sheriff's Office. Richardson argues that the affiants relied on polygraph test results, which were not admissible evidence. This

5

argument fails.

The affiants mentioned the results of a polygraph test not to prove the truth of those results, but as an explanation of the investigation by the Sheriff's Office. The conclusion reached by the Sheriff's Office following that investigation was the legitimate non-discriminatory reason for Richardson's termination proffered by the Sheriff's Office. The district court did not rely on the affidavits for any other purpose.

The district court did not conclude that the allegations against Richardson were truthful. The district court concluded that the Sheriff's Office fired Richardson because it believed the allegations were truthful. That conclusion was a legitimate non-discriminatory reason.

### B. *The District Court Correctly Granted Summary Judgment on Richardson's Discrimination and Retaliation Claims.*

Richardson argues that the summary judgment against his claims of religious discrimination was erroneous because there was direct evidence of discrimination and no admissible evidence to establish a legitimate non-discriminatory reason for his discharge. Richardson argues several theories of discrimination, and we address each theory. The analysis is same under both Title VII and section 1983. See Lee v. Russell County Bd. of Educ., 684 F.2d 769, 773 (11th Cir. 1982).

6

### 1. Direct Evidence

Richardson argues that there is direct evidence of discrimination on the basis of three statements. First, Richardson alleges that the defendants told him they were not going to accommodate him and that he needed to find another religion or another job. Second, Richardson alleges that the defendants stated "You want every Saturday off. We're sick of this. I wish you would find another job." Third, Richardson alleges that he was referred to as a "preacher man," a "minister," and was told he was "too preachy." Richardson's argument about these statements fails.

"[D]irect evidence is 'evidence, which if believed, proves [the] existence of [a] fact in issue without inference or presumption.'" Akouri v. Fla. Dept. of Transp., 408 F.3d 1338, 1347 (11th Cir. 2005) (quoting Burrell v. Bd. of Trs. of Ga. Military Coll., 125 F.3d 1390, 1393 (11th Cir. 1997) (alteration in original). "[W]e have defined direct evidence as evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee. . . . [O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination. If the alleged statement suggests, but does not prove, a discriminatory motive, then it is considered circumstantial

7

evidence." Id. (internal quotation marks and citations omitted). Because the statements about which Richardson complains allow an inference of discrimination, but do not prove a discriminatory motive in any employment action, the statements are circumstantial evidence.

### 2. Failure to Accommodate

Second, Richardson argues that the defendants discriminated against him because they failed to accommodate him. To establish a prima facie case of discrimination based on a failure to accommodate religious beliefs, Richardson was required to present evidence that "(1) he had a bona fide religious belief that conflicted with an employment requirement; (2) he informed his employer of his belief; and (3) he was discharged for failing to comply with the conflicting employment requirement." Beadle v. Hillsborough County Sheriff's Dept., 29 F.3d 589, 592 n.5 (11th Cir. 1994). If a prima facie case is established, the burden shifts to the employer to present evidence either that it offered to accommodate the plaintiff or that it could not reasonably accommodate him. Id. at 592.

Richardson failed to establish a prima facie case. Richardson produced no evidence to support his contention that he was fired for his inability to work on the Sabbath. The record is undisputed that the Sheriff's Office offered Richardson at least two accommodations. In the year after Richardson requested the

8

accommodation until his termination, Richardson never worked on the Sabbath.

### 3. Disparate Treatment

Third, Richardson argues that he was treated differently than other employees who did not request a religious accommodation. "In evaluating disparate treatment claims supported by circumstantial evidence, we use the framework established by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973), and <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed.2d 207 (1981)." <u>Wilson v. B/E Aerospace, Inc.</u>, 376 F.3d 1079, 1087 (11th Cir. 2004). Under this framework, the plaintiff must first establish a prima facie case of discrimination by presenting evidence that he was a member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class. <u>Id.</u> If the plaintiff establishes a prima facie case, the employer must articulate a legitimate non-discriminatory reason for its actions. <u>Id.</u> Finally, "[i]f the employer satisfies its burden by articulating one or more reasons, then the presumption of discrimination is rebutted, and the burden of production shifts to the plaintiff to offer evidence that the alleged reason of the employer is a pretext for illegal discrimination." <u>Id.</u>

Richardson's claim regarding his termination fails for at least two reasons.

9

First, Richardson did not establish a prima facie case of discrimination because he did not present evidence that employees outside of his protected class were treated more favorably than him. The deputies accused of sexual misconduct, all of whom were outside of Richardson's protected class, were, like Richardson, given the option of resigning or termination. Second, the Sheriff's Office articulated a legitimate non-discriminatory reason for Richardson's discharge, and Richardson failed to offer any evidence to rebut head-on that legitimate reason. Richardson's argument about the accuracy of the investigation against him does not question whether his employer actually relied on the results of that investigation to discharge him.

Richardson's other allegations of disparate treatment—that he was not promoted because of religion and other employees were permitted to take time off for school—fail. Although Richardson alleged that he was denied a promotion, for which he was qualified, and the successful candidate for the promotion was outside of his protected class, that evidence was not enough to establish a prima facie case. Richardson failed to present evidence that the selected candidate was equally or less qualified for the job. Id. at 1089. Richardson's argument that other employees were granted time off for school fails, because there is no evidence that the accommodations other employees requested were comparable to the religious

10

accommodation Richardson requested.

## 4. Retaliation

To establish a prima facie case of retaliation under Title VII, Richardson must present evidence that he engaged in statutorily protected expression, was subject to an adverse employment action, and that there is a causal link between the protected expression and the adverse action. Taylor v. Runyon, 175 F.3d 861, 868 (11th Cir. 1999). If Richardson establishes a prima facie case, the Sheriff's Office must present a legitimate reason for its employment actions. Id. After the Sheriff's Office proffers a legitimate reason, Richardson must rebut that reason. Id.

The district court concluded that, because a year passed between the time Richardson requested an accommodation and his termination, Richardson could not establish a causal link between his protected expression and his termination. Because Richardson alleges that he engaged in protected expression by complaining about discrimination as late as May 2002, we assume that he established a prima facie case, but Richardson failed to rebut the legitimate nondiscriminatory reason for his termination, which was sexual misconduct. We affirm the summary judgment on that alternative ground.

## 5. Hostile Work Environment

To establish a prima facie case for hostile work environment, Richardson had to present evidence that (1) he belongs to a protected class, (2) he was subject to unwelcome harassment, (3) the harassment was based on his religion, (4) the harassment was sufficiently severe and pervasive to alter the terms of his employment and create an abusive working environment, and (5) a basis for holding the employer liable. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 508 (11th Cir. 2000). "Harassment is subjectively severe and pervasive if the complaining employee perceives the harassment as severe and pervasive, and harassment is objectively severe and pervasive if a reasonable person in the plaintiff's position would adjudge the harassment severe and pervasive." Id. at 509. To determine the objective severity of harassment, "courts consider 'the frequency of the conduct,' 'the severity of the conduct,' 'whether the conduct is physically threatening or humiliating, or a mere offensive utterance,' and 'whether the conduct unreasonably interferes with the employee's job performance.'" Id.

Richardson alleges that he was subject to a hostile work environment because his supervisor referred to him as "preacher man" more than fifty times and other employees made comments regarding his religion and request for

accommodation. The district court correctly concluded that these allegations do not rise to the level of severe and pervasive harassment. The alleged harassment of which Richardson complains was not objectively severe or pervasive. The conduct was not threatening or more than an offensive utterance, and the conduct did not interfere with Richardson's job performance.

C. *The District Court Improperly Granted Immunity to the County, Sheriff and Deputies in Their Official Capacities on Richardson's State Law Claims.*

Richardson argues that the district court erroneously granted immunity to the County, Sheriff and deputies in their official capacities on his state law claims because the defendants had liability insurance. Richardson is correct. Georgia courts have "repeatedly held that liability insurance protection purchased or created by a governmental entity to insure against its own liability waives that entity's sovereign immunity." Gilbert v. Richardson, 264 Ga. 744, 751, 452 S.E.2d 476, 482 (Ga. 1994). Because it is undisputed that the defendants have liability insurance that would cover a judgment in this case, sovereign immunity is waived. The summary judgment regarding Richardson's claims against the County and its officers, under Georgia law, is reversed. On remand, the district court may, in its discretion, either exercise supplemental jurisdiction over Richardson's remaining claims, under Georgia law, or dismiss those claims without prejudice.

13

## IV.  CONCLUSION

The summary judgment against Richardson is

**AFFIRMED IN PART AND REVERSED AND REMANDED IN**

**PART.**